UNITED STATES of America, Plaintiff,

v.

**Lynn Richardson HARTZ, Defendant.**

Crim. No. 2:93–00283.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 13, 1994.

---

Hunter P. Smith, Jr., Asst. U.S. Atty., Charleston, WV, for plaintiff.

R. Clarke VanDervort & Brent D. Benjamin, Robinson & McElwee, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the Defendant's motion to modify the competency evaluation order entered April 26, 1994. For reasons discussed below the Court **DENIES** the Defendant's motion.

On or around April 4, 1994, the Court received an unsolicited letter from Dr. Joseph Whelan, a psychiatrist who has examined and treated the Defendant in recent months. Dr. Whelan's letter expressed the following opinion of the Defendant's mental condition:

> "[Ms. Hartz] suffers from a post-concussion syndrome, as well as a learning disability . . .
>
> .　　.　　.　　.　　.
>
> [S]ince the head injury, which she states occurred in March of 1993, she has not been functioning normally and has had problems with both memory and concentration.
>
> .　　.　　.　　.　　.
>
> [I]t is my belief, to a reasonable medical certainty, that since that head injury she has been behaving in an unusual manner and the fact that the head injury is still evident makes me believe that, in months past, she was much more disturbed than she even has been since I've been evaluating her. Difficulties associated with the charge of obstruction of justice appear to be related to the writing of progress notes, correctly or incorrectly in her charts, or the absence thereof. I believe that any omissions or commissions are directly related to the ongoing concussion syndrome, beginning with her head injury in March of 1993."

On April 20, 1994, the Government moved to determine the Defendant's mental competency and the status of a possible insanity defense. Following an April 25, 1994 hearing, which the Defendant and her counsel attended, the Court entered the April 26, 1994 competency evaluation order. That or-

der concluded there was reasonable cause to believe Ms. Hartz "may presently be suffering from a mental disease or defect rendering her mentally incompetent to the extent she is unable to understand the nature and consequences of the proceedings against her and to assist properly in her defense." 18 U.S.C. § 4241(a).[1] The Court also concluded there was "a question about whether the defendant was suffering from a mental disease or defect or other mental condition bearing upon the issue of guilt."

Pursuant to 18 U.S.C. §§ 4241(b), the Court determined the Defendant should undergo a psychiatric examination prior to the final competency hearing.[2] In accordance with 18 U.S.C. § 4247(b), the Court ordered the Defendant "committed to the custody of the Attorney General for placement in a facility closest to the Court, unless impracticable, to be examined as herein ordered for a reasonable period, but not to exceed 30 days...."[3]

The Defendant subsequently filed the instant motion to modify the competency evaluation order. The Defendant claims she was improperly denied the right to confront Dr. Whelan at the April 25 hearing, in violation of the Sixth Amendment. The Defendant also claims she was denied due process in violation of the Fifth Amendment, based on "the Government's failure to bring forward any witnesses in support of its Motion," and

based on "the Government's failure to produce any evidence at all that her commitment for a competency evaluation is essential." The Defendant claims her commitment constitutes an undue restriction of her liberty under the due process clause.

Finally, the Defendant claims her commitment to custody constitutes "a deprivation of the defendant's right to counsel since the defendant will be removed some distance and confined such that her communication with counsel will be limited."

## I. DUE PROCESS

■ The Court concurs in the due process analysis applied in *U.S. v. Weissberger*, 951 F.2d 392 (D.C.Cir.1991)[4]:

> "We ... find no constitutional infirmity in the evaluation process prescribed by 18 U.S.C. §§ 4241(a), (b), 4247(b). To determine whether procedural due process is violated, the court must consider the private interest at stake, the risk of erroneous deprivation of that interest, and the government's interest including any fiscal and administrative burdens. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This case pits [Defendant] Weissberger's liberty interest against the Government's interest in ensuring that he is competent for trial and in avoiding the costs of duplicative and unnecessary processes. Both the appellant

1. A defense of incompetency may not be waived by the Defendant or his attorney. *Kibert v. Peyton*, 383 F.2d 566, 568–569 (4th Cir.1967). When competency is raised, whether by the Defendant, the Government, or a third party, the Court may be *required* to hold a competency hearing:

   > "[The defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. *The Court shall grant the motion, or shall order such a hearing on its own motion,* if there is reasonable cause to believe the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent...." 18 U.S.C. § 4241(a) (emphasis added).

2. Section 4241(b) provides that "prior to the date of the [competency] hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with court,

pursuant to the provisions of section 4247(b) and (c)."

3. Section 4247(b) provides as follows: "For the purposes of an examination pursuant to an order under section 4241 ... the court may commit the person to be examined for a reasonable period, but not to exceed thirty days ... to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court."

4. The Court also believes this case is distinguishable from *In Re Newchurch*, 807 F.2d 404 (5th Cir.1986), since the Defendant's commitment is based on competency issues primarily, rather than limited to insanity issues. The court, not the jury, must determine the Defendant's competence for trial. *Hall v. United States*, 410 F.2d 653, 658 (4th Cir.1969). Such a determination is within the court's broad discretion. *Id.*, *U.S. v. West*, 877 F.2d 281, 285 n. 1 (4th Cir.1989).

and the Government have strong and valid interests in this case. We therefore resolve the question of whether procedural due process was violated by reference to the second prong of *Mathews*." *Id.* at 398.

Applying *Weissberger,* the Court recognizes the Defendant's strong liberty interest. The Government's response, however, notes that Defendant is designated to report at the federal medical center in Lexington, Kentucky. Lexington is a relatively short two and a half hour drive from Charleston. The Lexington facility is rated as "administrative," accommodating varying security needs and providing specialized medical or mental health treatment.

Additionally, the Government asserts commitment to the custody of the Attorney General provides the most efficient, thorough, and reliable method for the Court to determine the Defendant's competency. As stated in *Weissberger,* the Court must give weight to the Government's strong interest in avoiding duplicative and unnecessary examinations.[5]

Focusing on the likelihood of an erroneous deprivation of the Defendant's liberty interest, the Court believes Dr. Whelan's report provides reasonable cause for a mental examination pursuant to 18 U.S.C. §§ 4241(b) and 4247(b). Dr. Whelan is a licensed psychiatrist hired by the Defendant, and he asserts Ms. Hartz has been "disturbed," acting "unusually," and having "problems with both memory and concentration," apparently as a result of a head injury and "post-concussion syndrome."[6]

Based on the analysis applied in *Weissberger,* the Court concludes the competency evaluation ordered does not violate the Defendant's right to due process.[7]

## II. Sixth Amendment Rights

■ The Sixth Amendment Confrontation Clause provides a criminal defendant with "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). "[T]he right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. *Id.* at 52, 107 S.Ct. at 999.

Because this matter is not yet in the posture of a trial or ripe for a final competency hearing, the Court concludes the Sixth Amendment right of confrontation has not attached.

■ The Court also rejects the claim that commitment to custody deprives Ms. Hartz of her Sixth Amendment right to counsel. The Lexington facility accommodates varying security needs and the Defendant should have little problem consulting with her attorney.

Accordingly the Court **DENIES** the Defendant's motion to modify the competency evaluation order. The Clerk is directed to send a copy of this Order to counsel of

5. Ms. Hartz is a member of the Charleston community of mental health professionals, being a licensed social worker and counselor, and holding a psychology doctorate. The Government claims it may be difficult to obtain an unbiased local examination, particularly on an out-patient basis. Without passing on the validity of that claim, the Court chooses institutional evaluation for its presumed neutrality in observing statutory requirements on matters of referral from a court.

6. The Court notes that footnote one of the Defendant's motion to modify raises the serious possibility of an insanity defense:

"The defendant is considering relying upon an insanity defense to the obstruction of justice count of the Indictment since when she is alleged to have committed that violation, she had suffered head trauma in an automobile accident and soon thereafter had a hysterectomy...."

Such a defense accords with the opinion expressed in Dr. Whelan's letter: "Difficulties associated with the charge of obstruction of justice appear to be related to the writing of progress notes ... I believe that any [such] ommissions or commissions are directly related to the ongoing concussion syndrome...."

Upon filing of notice of insanity, and a corresponding motion by the Government, the Court must order a psychiatric or psychological examination of the defendant pursuant to 18 U.S.C. § 4247(b). 18 U.S.C. § 4242(a).

7. If anything the Court is trying to *protect* the Defendant's due process rights by ensuring her competence for trial.

record, the United States Marshal for the Southern District of West Virginia and the Probation Office of this Court.